IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HARLEY BOUGHNER, as Trustee of the
VERA D. BOUGHNER TRUST and as Trustee
of the ROBERT L. BOUGHNER TRUST,
LINDA A. McKEE, and KENT D. WILSON,

　　　　　　　　Plaintiffs,

　vs.　　　　　　　　　　　　　　　　　　No. CIV 04-813 LFG/WDS

LIFE PARTNERS, INC., a Texas corporation,

　　　　　　　　Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION AND
## INSUFFICIENT SERVICE OF PROCESS

THIS MATTER comes before the Court on Defendant Life Partners, Inc.'s ("LPI's") Motion

to Dismiss for Lack of Personal Jurisdiction and for Insufficient Service of Process [Doc. 4], filed

herein on August 9, 2004.  Plaintiffs filed a response and LPI a reply.  In mid August, LPI also

submitted a suggestion of additional authority as a result of a decision by the New Mexico Court of

appeals on an issue relating to jurisdiction.  [Doc. 8].  Both parties consent to jurisdiction before a

Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  No oral argument is necessary.  For the reasons

given below, the Court concludes that it has personal jurisdiction over LPI and that Plaintiffs have

effected valid service of process.  The Motion is therefore denied.

## Factual and Procedural Background

This is a dispute over a "viatical settlement" investment product made available to Plaintiffs

by Defendant LPI, a Texas corporation, and in which Plaintiffs were allegedly induced to invest by misrepresentations and other unfair and illegal means.  A viatical settlement is a transaction in which an insured terminally ill person (the "viator") sells at a discount the benefits of his or her life insurance policy to a third party in return for a lump-sum cash payment.  The discount is determined by the insured's life expectancy, and the investor's return depends in part on how long the viator lives.

Viatical settlement providers such as LPI typically locate the policies, obtain life expectancy evaluations on individual viators, purchase the policies from individual viators, and sell full or fractionalized interests in the policies to investors such as these New Mexico Plaintiffs.  When the insured dies, the investors receive the proceeds of the insurance policy.  The investor's profit is the difference between the discounted purchase price paid to the insured together with all premiums paid by the investor, and the death benefit collected from the insurer.  If the viator lives longer than expected, the investors are obliged to continue paying additional premiums to keep the policy in force.  SEC v. Life Partners, Inc., 87 F.3d 536, 537 (D.C. Cir. 1996); SEC v. Mutual Benefits Corp., 323 F. Supp. 2d 1337,  1338 (S.D. Fla. 2004).

Plaintiffs are three individuals residing in New Mexico.[1]  They allege being misled by LPI, to their detriment, into investing in LPI's viatical settlement products.  Plaintiff Harley Boughner ("Boughner") is the trustee of two family trusts established with the assets of his late parents, Vera D. and Robert L. Boughner.  The trusts are maintained for the benefit of Boughner's children. [Complaint, Ex. A. to Doc. 1, at ¶ 2, 35-36].  Plainitffs allege in the complaint that Boughner and the

---

[1]LPI questions Plaintiffs' assertions of New Mexico residence.  The Court resolves any question on this issue in favor of Plaintiffs which, as discussed below, it is bound to do in the current procedural posture. Behagen v. Amateur Basketball Ass'n of U.S.A., 744 F.2d 731, 733 (10th Cir. 1984).

other two Plaintiffs, Linda A. McKee ("McKee") and Kent D. Wilson ("Wilson") are residents of New Mexico, and that they all invested in viatical settlements made available to them by LPI.

Plaintiffs allege that LPI advertises its services via an Internet web site and other means including mailings to potential investors, and that in these promotional materials, LPI represents that the viatical settlements it offers are based on insurance policies for viators who have been diagnosed as terminally ill and who have life expectancies of no more than 48 months. [Complaint, at ¶¶ 11-22].

Boughner says he first became aware of the investment potential of viatical settlements in late 1997 and that he learned of LPI's viatical investment products as a result of an Internet search. [Complaint, at ¶¶ 38-39]. In December 1997, after viewing LPI's website, he contacted LPI to request information and LPI responded by sending him material. LPI emphasizes that no contracts could be made via the internet, and that applications or license agreements had to be submitted by mail to LPI's corporate headquarters in Waco, Texas. LPI's website described viatical investments and contained certain representations as to the potential return on these investments and the life expectancy of the viators whose policies LPI owned. [Complaint, at ¶¶ 40-54].

In addition to investing in viatical policies, LPI offered licensee agreements that would allow individuals to earn commissions by finding other investors. Boughner entered into a Licensee Agreement with LPI. Under this agreement he was to seek, at his own expense, qualified investors who would purchase LPI's products. [Complaint, at ¶¶ 56-57; Doc. 10, Ex. 1 and attachments thereto]. Boughner invested in LPI's products, and he encouraged McKee and Wilson to also invest. All three Plaintiffs subsequently entered into Agency Agreements and Policy Funding Agreements pursuant to which they purchased full and partial interests in the life insurance policies of thirteen different individuals, each of whom was diagnosed with a terminal illness. LPI anticipated that each

viator would likely not live more than 36 months. Approximately 72 months after these investments were made, Plaintiffs state, none of the 13 allegedly terminally ill viators has died, and Plaintiffs have received no return on their investments. Because the portion of the investment escrowed to pay premiums on the various insurance policies for the anticipated life span of the viators has been expended, Plaintiffs were told by LPI that they must continue to pay premiums on the policies so as to prevent the policies from lapsing due to non-payment, resulting in the loss of their investment. [Complaint, at ¶¶ 33-34, 83-86; Doc. 10, Exs. 1-3].

Plaintiffs further complain that LPI's representation that it estimates the life expectancy of each viator by relying on an "independent reviewing physician" is false, because the physician in question is not "independent" but rather is a current or former member of the board of directors of LPI and owns or owned a 5 percent interest in the company. In addition, they contend, this doctor was not qualified to estimate the life expectancies of AIDS patients, and he failed to make reasonable inquiries regarding the health of the viators. Plaintiffs assert that these facts regarding the physician were not revealed to them prior to their investment. [Complaint, at ¶¶ 61-69].

Plaintiffs contend that the medical update reports on the viators, which they were promised by LPI, contained no substantive information other than an indication of the date each viator last saw a doctor. Furthermore, they assert, in two instances LPI admitted that it could not provide medical updates on two of the viators because it lost track of these particular individuals. [Complaint, at ¶¶ 79-81]. The Plaintiffs allege further that LPI represented to Plaintiff McKee that it would assist her in re-selling her investments but that it has failed to do so. [Complaint, at ¶ 82].

Plaintiffs originally brought this action in New Mexico state court, asserting causes of action based on violation of the New Mexico Unfair Practices Act, N.M.S.A. 1978 § 57-12-1 *et seq.*;

violation of the New Mexico Unfair Insurance Practices Act, N.M.S.A. 1978 § 59A-16-1, *et seq.*;
the tort of misrepresentation; breach of fiduciary duty; breach of contract; and breach of the implied
covenant of good faith and fair dealing.

LPI removed the case to federal court on diversity grounds and now moves to dismiss the
action, asserting an absence of personal jurisdiction in New Mexico and claiming that Plaintiffs'
attempted service of process was ineffective.  In an affidavit submitted with its motion to dismiss,
LPI's president and general counsel, R. Scott Peden, testified that LPI is a Texas corporation with
its offices in Waco.  It is incorporated to do business in Texas and is regulated by the Texas
Department of Insurance as a viatical settlement company.

Peden states that LPI does not conduct business in New Mexico and has not sought
qualification to do business here.  LPI has no New Mexico subsidiaries, officers, directors or
employees who live or work here.  Peden attests that LPI has no branch offices, phone listings or
mailing address in this state.  No board of directors or shareholder meetings have ever been held in
New Mexico.  Peden notes that LPI owns no property here and does not pay taxes here.  Indeed,
Peden concludes that its only connection with the state is that it maintains informational websites
which permit individuals here or anywhere to obtain general information.  [Doc. 4, Ex. A].

The primary issue on this motion is whether LPI's interactions with Plaintiffs, many of which
occurred over the Internet, constitute the requisite "minimum contacts" with the state of New Mexico
sufficient to justify personal jurisdiction over LPI in this Court.

## Discussion

In one of the seminal cases on "minimum contacts," the Supreme Court noted:

> [The Due Process Clause] does not contemplate that a state may make

> binding a judgment in personam against an individual or corporate
> defendant with which the state has not contacts, ties, or relations . . .
> .  But to the extent that a corporation exercises the privilege of
> conducting activities within a state, it enjoys the benefits and
> protection of the laws of that state.  The exercise of that privilege may
> give rise to obligations; and, so far as those obligations arise out of or
> are connected with the activities within the state, a procedure which
> requires the corporation to respond to a suit brought to enforce them
> can, in most instances, hardly be said to be undue.

International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S. Ct. 154, 160 (1945).

When confronted with a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ.

P. 12(b)(2), the Court may in its discretion proceed on affidavits alone, may permit discovery, or may

hold an evidentiary hearing.  Nova Mud Corp. v. Fletcher, 648 F. Supp. 1123, 1124 (D. Utah 1986).

The plaintiff bears the burden of establishing personal jurisdiction over a nonresident defendant.

However, if the Court chooses to proceed on affidavits the plaintiff need only make a prima facie

showing of personal jurisdiction, and in this situation the allegations of the complaint must be taken

as true to the extent they are uncontroverted by the defendant's affidavits; if the parties present

conflicting affidavits, all factual disputes are resolved in the plaintiff's favor.  Behagen v. Amateur

Basketball Ass'n of U.S.A., supra, at 733; Sunwest Silver, Inc. v. Int'l Connection, Inc., 4 F. Supp.

2d 1284, 1285-86 (D.N.M. 1998).  Accordingly, for purposes of this motion the Court resolves any

factual or inferential disputes in favor of Plaintiffs.    In determining whether personal jurisdiction

exists over a nonresident defendant, a federal court applies the law of the forum state, subject to the

limits of the Due Process Clause of the Fourteenth Amendment.  Soma Medical Int'l v. Standard

Chartered Bank, 196 F.3d 1292, 1295 (10th Cir. 1999). Determination of personal jurisdiction in this

case, therefore, is made in accordance with New Mexico law.  Far West Capital, Inc. v. Towne, 46

F.3d 1071, 1074 (10th Cir. 1995); Pelton v. Methodist Hosp., 989 F. Supp. 1392, 1393 (D.N.M.

1997).  New Mexico interprets its long arm statute "as extending our personal jurisdiction as far as constitutionally permissible."  FDIC v. Hiatt, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994).  The statute provides for personal jurisdiction over an out-of-state defendant who performs certain acts including "the transaction of any business within the state," and "the commission of a tortious act within this state."  N.M.S.A.1978 § 38-1-16(A)(1) and (A)(3).  Only causes of action arising from acts enumerated in the statute may be asserted against the nonresident defendant.  N.M.S.A. § 38-1-16(C).  Plaintiffs in this case rely on both subsections (A)(1), transaction of business, and (A)(3), commission of a tortious act, in asserting personal jurisdiction over LPI in New Mexico.

      The courts of this state apply a three-pronged test to determine whether they can constitutionally assume personal jurisdiction over a nonresident defendant:  (1) the defendant's acts must be among those enumerated in the long-arm statute; (2) plaintiff's cause of action must arise from those acts; and (3) the exercise of jurisdiction over the defendant must comport with the Due Process Clause.  Benally v. Amon Carter Museum of Western Art, 858 F.2d 618 (10th Cir. 1988), citing Salas v. Homestake Enters., Inc., 106 N.M. 344, 742 P.2d 1049 (1987).

      New Mexico and the Tenth Circuit distinguish between "general" and "specific" personal jurisdiction.  General personal jurisdiction requires that the plaintiff demonstrate "continuous and systematic" contacts between the nonresident defendant and the forum state, but "permits a court to exercise power over a defendant without regard to the subject of the claim asserted."  Soma Medical International, supra, at 1295; Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1418 (10th Cir. 1988).  Specific personal jurisdiction, on the other hand, applies in cases where the subject matter of the suit arises from or is related to the defendant's contacts with the forum.  Rambo, supra, at 1418; Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc., 45 F. Supp. 2d 1255, 1257 (D.N.M. 1999).

Plaintiffs in this case argue for "special" personal jurisdiction. They must therefore demonstrate that their cause of action arises from or is related to the specific activities which constitutee Defendant's requisite "minimum contacts" with New Mexico. Plaintiffs request that, if the Court finds an absence of specific personal jurisdiction, that they be allowed to conduct targeted discovery in order to present evidence of continuous and systematic contacts between LPI and the state of New Mexico which would support the assumption of general personal jurisdiction over defendant. The Court finds, however, as set forth below, that Plaintiffs have established "specific" personal jurisdiction. It is therefore not necessary to consider whether the Court also has "general" personal jurisdiction over LPI. With these standards in mind, the Court turns to the three-pronged test for determining jurisdiction.

A. **First Prong:  LPI "Transacted Business" Within the Forum State**

The first question to be addressed under the three-part "minimum contacts" test is whether defendant's alleged acts are among those enumerated in the long-arm statute. As noted above, Plaintiffs in this case contend that LPI's alleged actions constitute transaction of business in New Mexico, as well as commission of a tortious act here and that therefore this prong of the test is satisfied. The Court agrees that LPI "transacted business" in New Mexico within the meaning of the long-arm statute and thus does not reach the question whether Defendant committed tortious acts within the state.

The first prong of the jurisdictional test requires the Court to determine "whether a party's business activity constituted 'purposeful availment' of the privilege of conducting activities within the forum state." Benally v. Amon Carter Museum of Western Art, *supra*, at 623, *citing* Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958):

> The application of the rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

This requirement of purposeful availment has been described as the "'Constitutional touchstone' of the minimum contacts analysis." Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1123 (W.D. Pa. 1997). Zippo is the seminal case on personal jurisdiction in the context of Internet contacts. It relies heavily on Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S. Ct. 2174 (1985), in which the Supreme Court held:

> This "purposeful availment" requirement ensures that a defendant will not be haled in to a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person . . . . Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State . . . . Thus where the defendant deliberately has engaged in significant activities within a State, . . . or has created continuing obligations between himself and residents of the forum, . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. [Internal punctuation omitted; emphasis in original].

If a defendant reaches out beyond one state and "create[s] continuing relationships and obligations with the citizens of another state," that defendant is subject to regulation and sanctions in the other state for the consequences of its actions. Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647, 70 S. Ct. 927, 929 (1950); Benton v. Cameco Corp., 375 F.3d 1070, 1077 (10th Cir. 2004). This type of continuing relationship is to be contrasted with situations where the defendant's contacts with the forum are purely "random, fortuitous, or attenuated." Burger King Corp. v.

9

Rudzewicz, *supra*, 471 U.S. at 475.

Some years ago, the Supreme Court had occasion to describe a "clearly discernible . . . [trend] toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." McGee v. Int'l Life Ins. Co., 355 U.S. 220, 222, 78 S. Ct. 199, 201 (1957). The Court attributed this expansion in part to the transformation of the American economy due to the "nationalization of commerce" and a resulting increase in the transaction of business across state lines. Id., 355 U.S. at 223. "At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." Id.

That ubiquitous form of "modern communication," the Internet, is the latest in a series of technological advances that have forced courts to rethink the basis for assuming personal jurisdiction over out-of-state defendants.

> The Internet represents perhaps the latest and greatest manifestation of these historical, globe-shrinking trends. It enables anyone with the right equipment and knowledge . . . to operate an international business cheaply, and from a desktop. That business operator, however, remains entitled to the protection of the Due Process Clause, which mandates that potential defendants be able to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit.

CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).

Companies that communicate through the Internet have the ability to make their message available to a very wide audience, and "through the use of computers, corporations can now transact business and communicate with individuals in several states simultaneously." California Software Inc. v. Reliability Research, Inc., 631 F. Supp. 1356, 1363 (C.D. Cal. 1986). Once a posting is made on

the Internet, moreover, it is continuously available to any Internet user.  Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161, 164 (D. Conn. 1996).  These advantages tend to broaden the basis for personal jurisdiction and lend weight to a conclusion that a defendant corporation has purposefully availed itself of the privilege of doing business in a forum where its message has reached forum residents and resulted in advantageous commercial relationships with customers or agents within the forum.

> Thus, while modern technology has made nationwide commercial transactions simpler and more feasible, even for small businesses, it must broaden correspondingly the permissible scope of jurisdiction exercisable by the courts.

Maritz, Inc. v. Cybergold, Inc., 947 F. Supp. 1328, 1334 (E.D. Mo. 1996).

When personal jurisdiction issues are entwined in a fact pattern which includes Internet use, the courts have generally followed the approach of the Zippo case and applied a sliding scale whereby "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  Id., at 1124.  The New Mexico Court of Appeals recently approved of the Zippo sliding-scale approach in jurisdictional cases based on Internet contacts.  Sublett v. Wallin, 136 N.M. 102, 94 P.3d 845, 852 (Ct. App. 2004).

It is clear that physical contact with the forum state is not necessary so long as the defendant corporation's efforts are "purposefully directed" toward residents of the state, for example where defendants engage in negotiations with the resident plaintiffs and expect future consequences from those negotiations and contacts.  *See*, CompuServe, *supra*, 89 F.3d at 1264-65.  Jurisdiction is appropriate in cases involving Internet transactions when the relationship is "intended to be ongoing

in nature" rather than a "one-shot affair."  Id., at 1265.

At one end of the spectrum envisioned in Zippo are those situations where a defendant clearly "does business over the Internet" by, for example, entering into contracts with residents of foreign jurisdictions that involve the knowing and repeated transmission of computer files over the Internet. In these situations, personal jurisdiction in the foreign state is appropriate.  At the other end of the spectrum, where personal jurisdiction is not justified unless other contacts are present, are those cases where the defendant simply posts information on a web site accessible to users in other jurisdictions. In between lie cases involving interactive web sites where a user can exchange information with the host computer.  "In these cases," the Zippo court held, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."  Id., at 1124.

In PurCo Fleet Services, Inc. v. Towers, 38 F. Supp. 2d 1320 (D. Utah 1999), a district court in the Tenth Circuit found personal jurisdiction over an out-of-state company which posted information on an Internet web site.  Following the sliding scale approach of Zippo, the court distinguished between a passive advertisement on the Internet which merely provides information to those interested in it, and a web page which enables users to contact the defendant via e-mail thus permitting conversations between the defendant and potential customers.  The PurCo court did not say that the latter, standing alone, would necessarily justify personal jurisdiction over the posting company, but it did find that jurisdiction was proper where a defendant, among other things, "used its web site to solicit business from a Utah resident."  PurCo, supra, at 1324.  The same district court noted a few years later:

Consistent with traditional analysis concerning minimum contacts with

12

> the state in question, it is the activities and *specific interactions* with the website which determine the existence of personal jurisdiction . . . . Specific interactions at the website and emails may define more clearly whether a defendant has purposefully availed herself of the privileges of the forum state . . . [and] a website may progress along the [Zippo sliding scale] spectrum depending upon actual interactions. [Emphasis in original].

Stewart v. Hennesey, 214 F. Supp. 2d 1198, 1203-04 (D. Utah 2002).

In Sublett v. Wallin, *supra*, the New Mexico Court of Appeals declined to exercise jurisdiction over a nonresident corporate defendant, finding, *inter alia*, that the corporation's web site merely pointed Plaintiff toward another defendant, its franchisee in New Mexico, with whom Plaintiff entered into a business relationship. The corporation did nothing further toward the transaction of business in New Mexico and did not derive any profit from its franchisee relationship with its co-defendant. This is not the circumstance presented in the present case.

LPI would like to characterize its involvement with the New Mexico Plaintiffs as a mere passive posting on an Internet web site. It argues that it should not be haled into court in any jurisdiction where individuals might access its web site – which could potentially, of course, be anywhere in the world – to answer claims made by citizens of the forum states arising from transactions which were, in any event, initiated by the Plaintiffs, not LPI. LPI likens its role to that of the defendant corporation in the above-described Sublett case, wherein the out-of-state company merely referred Plaintiff to an in-state actor, its franchisee, and derived no prospective benefit from the franchise arrangement.

This argument ignores the fact that LPI did more than passively post information to the Internet. Rather, it conducted negotiations with Plaintiff Boughner and eventually entered into a contract with him whereby Boughner, whose primary residence is New Mexico, would solicit

business for LPI within the state of New Mexico.  Boughner found additional investors and

encouraged them to invest in LPI's products.  Moreover, LPI's website was not a purely passive

informational site.  Here, the Plaintiffs assert that they were provided with a personal identification

number (PIN) and could engage in an interactive process with LPI over the internet.  The website's

interactive process allowed its customers to:

> 1.  Check the individual viatical settlement portfolio for any particular
> client or all your clients including the amounts invested, when the
> investment was made, which policies they have invested in and
> whether the policy has paid out yet.
>
> 2.  View all available policies and confidential case histories on-line.
>
> 3.  Make reservations and get placement confirmations.
>
> 4.  Download agency agreement and policy funding agreement forms.
>
> 5.  Check your licensee information and make updates or corrections.
>
> 6.   Check your purchaser information and make updates or
> corrections.
>
> 7.  E-mail me directly or request updates for your clients.
>
> Attachment 4 to Ex. 1, May 14, 1999 letter from Deborah Carr, vice
> president, LPI licensee relations, to Harley Boughner.

Under these circumstances, the Court finds that LPI purposely created a "continuing

relationship" with Boughner.  It negotiated a business arrangement with him and thereafter provided

him with a password so that he could access the interactive portion of LPI's web site in order to track

his investments, and those of the persons whom he solicited under his agreement with the company.

LPI's contacts with New Mexico were not merely "random" or "fortuitous," as was the case in

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559 (1980), wherein plaintiffs

attempted to base personal jurisdiction over an automobile manufacturer which had made no efforts to establish any business contacts in the forum state, on the fortuitous circumstance that an automobile collision occurred there.

The LPI - Boughner relationship is more akin to the one at issue in Milligan v. Anderson, 522 F.2d 1202 (10th Cir. 1975), wherein the court found sufficient minimum contacts to support personal jurisdiction in Oklahoma over a defendant named Cabeen, who entered into an agreement with another defendant, Anderson, to find some investors for a project of his:

> Cabeen, who was a resident and citizen of California, had some oil and gas interests in South America, and he proposed to develop and further explore such interests. To initiate such operations Cabeen apparently needed some additional financing. According to Anderson, Cabeen asked him, Anderson, to find some investors for him. In this general setting Anderson, who maintained offices in Oklahoma City, contacted the three plaintiffs in Oklahoma City and succeeded in interesting them in these oil and gas ventures. The plaintiffs did invest . . . . From time-to-time Cabeen sent various materials relating to these South American ventures to Anderson in Oklahoma City, who in turn used such materials in his dealings with the plaintiffs.

Id., at 1206.

As was true with Cabeen, LPI entered into an agreement with a resident of the forum state – Boughner – under the terms of which Boughner was to find investors for LPI's viatical products. LPI mailed information to Boughner and gave him access to the interactive portion of its web site for his use in dealing with other investors. Under a similar fact pattern in the Milligan case, the Tenth Circuit was "firmly of the view that in holding that there is *in personam* jurisdiction over Cabeen we are not doing violence to traditional concepts of fair play and substantial justice." Id., at 1207. Similarly, the New Mexico Supreme Court found that a defendant "transacted business" in the state by its actions in having the plaintiff solicit orders and make delivery to purchasers, in essence

"advertis[ing] its products through plaintiff."  Winward v. Holly Creek Mills, Inc., 83 N.M. 469, 471, 493 P.2d 954, 956 (1972).

In its due process analysis in Soma Medical Int'l, *supra*, the Tenth Circuit affirmed a district court's conclusion that it had no personal jurisdiction over an international banking institution incorporated in Great Britain, where the defendant bank did not solicit the plaintiff's business and where the bulk of its contacts with the forum state consisted of faxes, written communications concerning the plaintiff's account, a few wire transfers of funds, and the maintenance of a passive web site which "merely provid[ed] information to interested viewers."  Id., at 1299.  The court in Soma Medical observed that the fact that the plaintiff happened to be a resident of Utah was of no consequence to the defendant bank.

The same is not true in the present case.  Here, LPI posted information on its web site for the purpose of attracting investors.  It is not important that the contract itself was not signed or concluded through the Internet, because the initial contacts led to an agreement whereby LPI entered into a continuing relationship with Boughner, who was by the terms of the agreement expected to seek out other investors for LPI's products.  These other investors were themselves New Mexico residents.  LPI's position in this regard is fundamentally different from the British bank's in the Soma Medical case in that the bank did not expect the plaintiff therein to seek out further business for its products; rather, it was simply servicing an account established by the plaintiff.

The situation in the present case can also to be contrasted to that in CABA Ltd. Liability Co. v. Mustang Software, Inc., 127 N.M. 556, 984 P.2d 803 (Ct. App. 1999), wherein the New Mexico Court of Appeals found no personal jurisdiction in New Mexico over a California corporation where all contacts between the parties took place by telephone, fax and mail between New Mexico and

16

California.  The defendant in that case completed a business agreement with New Mexico plaintiffs whereby plaintiffs would develop software applications for defendant.  There was no arrangement, such as that found in the present case, under which the plaintiffs were to go out and find other persons who would also enter into contractual arrangements with the defendant company.

In addition, the court in CABA Ltd. noted that the California company did not voluntarily solicit or advertise within New Mexico.  In the present case, LPI initiated Internet advertising which reached potential customers in New Mexico and resulted in the business arrangement between Boughner and LPI.  In addition, the court in CABA Ltd. distinguished an earlier New Mexico case, Winward v. Holly Creek Mills, Inc., supra, in which the state supreme court found that the defendant's actions in hiring plaintiff to solicit orders and make delivery to purchasers, essentially using the plaintiff to advertise its products, constituted a "transaction of business" in New Mexico.  The Winward situation is more akin to that in the present case.

It is true that the "unilateral act" of the plaintiff is not enough to satisfy the first prong of the jurisdictional test; rather, the connection "must come about by an action of the defendant purposefully directed toward the forum state."  Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S. Ct. 1026, 1032 (1987).  Although the relationship between Boughner and LPI began when Boughner accessed the company's web site and requested information, the relationship thereafter grew and developed, and ultimately consisted of much more than this one act.  But for this follow-up and expanding business arrangement, the Court's conclusion would have been different.  The former would have been insufficient to extend this Court's jurisdiction to Defendant.  The latter, however, does evidence a "purposeful availment" sufficient to conclude there is indeed jurisdiction.  The Court in Asahi Metal listed as examples of a defendant's "purposeful action" directed toward the

17

forum such things as establishing channels for providing regular advice to customers in the forum state, and marketing the product through a distributor in the forum.  Both of these things occurred in the present case.

Even if Boughner and the other plaintiffs are LPI's only business contacts in New Mexico, that fact would not destroy jurisdiction, as "the Supreme Court has made clear that even  a single contact can be sufficient . . . .  The test has always focused on the 'nature and quality' of the contacts with the forum and not the quantity of those contacts."  Zippo, supra, at 1127, citing McGee v. Int'l Life Ins. Co., supra, 355 U.S. 220; and International Shoe Co. v. Washington, supra, 326 U.S. 310. See also, Moore v. Graves, 99 N.M. 129, 131, 654 P.2d 582, 584 (Ct. App. 1982) ("[a] single transaction negotiated or to be performed within New Mexico can be sufficient contact . . . .  Place of execution of the contract is not controlling, essential or even highly significant in making a determination").

LPI argues that it was Boughner who initiated the contacts in that he actively responded to information which LPI passively posted on the Internet.  The identity of the initiating party is not unimportant, but the Court does not consider it the deciding factor in this case.  The Tenth Circuit noted that the Supreme Court in Burger King Corp., supra, and International Shoe, supra, "rejected mechanical tests and adopted a realistic approach, which analyzed the entire relationship of the parties." [Internal punctuation omitted].  Far West Capital, supra, at 1074.

It is true that "a defendant's responses to the unilateral acts of a plaintiff are not contacts with the forum state sufficient to establish personal jurisdiction."  Sunwest Silver, supra, at 1287. However, LPI's contacts with its New Mexico investors, and with the New Mexico resident – Boughner – with whom it contracted to seek out investors and bring them into the fold, goes beyond

mere placement of an advertisement in a trade magazine and the filling of one order for purchase of merchandise which the Sunwest Silver court found insufficient to support personal jurisdiction.  *See also*, Williams v. Bowman Livestock Equip. Co., 927 F.2d 1128 (10th Cir. 1991) (the act of advertising in national journals to which potential customers in the forum state might possibly subscribe does not support *in personam* jurisdiction).

Furthermore, the Court rejects the characterization of LPI's role as passive.  It may be true that simply posting information on the World Wide Web does not serve to subject the posting individual or entity to personal jurisdiction in any location where the information is read.  Soma Medical Int'l, *supra*, at 1297.  However, that is not the issue raised by the facts in this case.  Here, LPI purposely availed itself of the rights and obligations of New Mexico jurisdiction by engaging in continuing contacts, discussions, negotiations, contractual relations, and ongoing expectations arising from a business relationship with Boughner and those persons whom Boughner, in the course of that relationship, brought to LPI as investors in the company's viatical products.  By doing so, it "pursued a business relationship" with a New Mexico resident, Benton v. Cameco Corp., *supra*, at 1077 and, as in Benton, "[t]his is not a case in which the defendant's only contacts with the forum resulted from 'the mere unilateral activity' of the plaintiff."  Id., at 1078.

As the Zippo court remarked, a corporate defendant is under no obligation to sell its services to forum residents.  If it "freely cho[oses] to do so, presumably in order to profit from those transactions," the forum state may appropriately assume personal jurisdiction.  "If [defendant corporation] Dot Com had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple – it could have chosen not to sell its services to Pennsylvania residents."  Id., at 1126-27.

> It is these factors – prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

Burger King Corp., *supra*, 471 U.S. at 479.

It is true that the Tenth Circuit rejected an argument for personal jurisdiction in Utah based in part on negotiating activities between the Utah plaintiff and the Nevada defendants, which the Court characterized as "scattered contacts alleged in negotiating a contract . . . ." Far West Capital, *supra*, at 1076. However, that case involved a lease agreement relating to Nevada real property, "designed to build a power plant in Nevada to provide power from Nevada geothermal resources to a Nevada utility." It is not surprising, under these facts, that court decided that Utah had insufficient contacts with the transaction to justify personal jurisdiction over the defendants, a Nevada company and an individual resident of Nevada.

The Court acknowledges that Defendant's arguments that it has no physical office in New Mexico, no bank account nor any employees, and has not registered to do business in this state, carry some weight in the jurisdictional calculus. But these facts are not determinative. Indeed, Plaintiff argues that LPI *should* have done at least some of these things, as its contacts with New Mexico required it to obtain "necessary licenses and approvals" from the State. [Complaint, ¶ 96]. Considering all the circumstances, the Court finds that the actual course of dealings between Plaintiffs and Defendant herein, including Defendant's use of an interactive web site to scout out potential customers and business partners in New Mexico, as well as the course of negotiations leading to the agreement between LPI and New Mexico resident Boughner whereby he would obtain investors for LPI products, and finally the fact that all parties "contemplated future consequences" from the

20

arrangement, establishes a prima facie case that LPI purposefully availed itself of the protections of New Mexico law.

The first prong of the three-part test is satisfied with respect to LPI's "transaction of business" in the forum state.  As stated above, the Court therefore does not reach the issue of whether LPI's alleged conduct also constituted the commission of a tortious act in the forum.

## B. Second Prong:  Plaintiffs' Claims Arose From LPI's Contacts With New Mexico

As noted above, when a plaintiff asserts specific jurisdiction over a nonresident defendant, the plaintiff's cause of action must "arise out of or relate to" the defendant's contacts with the forum. Burger King Corp., *supra*, 471 U.S. at 472; Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996).  This is also one of the requirements of the New Mexico long arm statute, N.M.S.A. 1978 § 38-1-16(A).

"The statutory phrase 'arising from' requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of the . . . courts."  Winward v. Holly Creek Mills, *supra*, 83 N.M. at 472.  The relevant inquiry is whether the plaintiff would have suffered the same injury even if none of the defendant's forum contacts had occurred.  Purple Onion Foods, Inc., *supra*, at 1261; Kuenzle, *supra*, at 456-57.

Plaintiffs' causes of action against LPI include claims under the New Mexico Unfair Practices Act, N.M.S.A. 1978 § 57-12-1 *et seq*. and the New Mexico Unfair Insurance Practices Act, N.M.S.A. 1978 § 59A-16-1, *et seq.*; the tort of misrepresentation; breach of fiduciary duty; breach of contract; and breach of the implied covenant of good faith and fair dealing.  These claims arise from Plaintiffs' underlying assertion that LPI misrepresented the risks involved in the viatical settlement investment products they offered.  In particular, Plaintiffs claim that the information

included in LPI's postings on the web site and in promotional materials mailed to Plaintiffs were "filled with misrepresentations" designed to induce them to invest, including information as to the life expectancy of the viators whose insurance policies LPI had purchased.

In addition, Plaintiffs claim that LPI sent them periodic reports, which purported to provide current information on each viator's medical condition but which were deficient in that they provided only the date of the viator's most recent medical visit, often simply repeating information that had been sent in earlier reports. LPI even allegedly lost track of two of the viators in whose policies Plaintiffs had invested.  Plaintiffs also complain that LPI represented that the medical condition of each viator had been examined by an "independent" medical professional, whereas the doctor in question was not independent of LPI and in fact sat on the company's board of directors and, furthermore, was unqualified to make the medical determinations crucial to Plaintiffs' investment decisions.

Whether these allegations are sufficient to impose liability on LPI is a question for another day.  At present, the Court finds that the allegations of Plaintiffs' complaint "arise from" the contacts with New Mexico and thus support personal jurisdiction in this state.  As discussed above, LPI's contacts with New Mexico include postings on the Internet which reached Plaintiffs in New Mexico, and promotional materials mailed to Plaintiffs at their residences in New Mexico which contained allegedly misleading information as to the life expectancies of LPI viators and thus as to the value of the viatical settlements.  Plaintiffs also allege that LPI induced them to invest by stating they would send periodic reports on each viator's medical condition but thereafter sent reports to Plaintiffs in New Mexico which did not fulfill that promise.  In addition, LPI provided Boughner with a password to enable him to access the interactive portion of the LPI web site so that he could obtain confidential

22

information for use in attracting other investors to LPI's products.

The claims of misrepresentation and unfair practices "arise from" or are "related to" the above-described contacts which supply the basis for jurisdiction, in that the alleged misrepresentations which form the basis of the lawsuit were contained within, and formed a substantive part of, the Internet postings and promotional mailings into New Mexico which prompted Plaintiffs' interest in LPI's products. These misrepresentations related to the value of the investments as well as to the content of the periodic reports that were to be sent to Plaintiffs in New Mexico. In addition, the confidential information at the interactive portion of LPI's web site included allegedly misleading information as to the life expectancies of individual viators.

Thus, LPI's contacts with Plaintiffs within the forum state gave rise to the claims in this case. Plaintiffs' alleged injury could not have occurred if LPI had not made these contacts with the forum state, and the claims can fairly be said to "lie in the wake" of the commercial activities by which LPI submitted to the jurisdiction of New Mexico courts. Winward, supra; Kuenzle, supra. The Court finds that the second prong of the jurisdictional test has been satisfied.

**C.  Third Prong: Assumption of Jurisdiction Does Not Offend Due Process Principles**

The final prong of the three-part test requires the Court to consider whether assumption of jurisdiction would offend "traditional notions of fair play and substantial justice." International Shoe, supra, 326 U.S. at 316. The question is whether the relationship between the defendant and the forum is such that it is "reasonable . . . to require the corporation to defend the particular suit which is brought there." Id.

> The analyses of minimum contacts and reasonableness are complementary, such that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on

minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts. [Internal punctuation omitted].

Benton v. Cameco Corp., *supra*, at 1078-79. However, it is a "rare case" in which the prong-three reasonableness inquiry will defeat jurisdiction in the face of the plaintiff's having established purposeful availment. Asahi Metal Industry, *supra*, 480 U.S. at 116 (Brennan, J., concurring).

The Court is to consider several factors in making the "reasonableness" or "fairness" determination. Those factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and more generally, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." World-Wide Volkswagen, *supra*, 444 U.S. at 292; Benton, *supra*, at 1078. "The strength of these factors sometimes serves to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1095 (10th Cir. 1998).

With regard to the first factor, the Court finds that it may be somewhat burdensome for LPI, a Texas corporation, to answer Plaintiffs' claims in a New Mexico court but that these burdens are relatively minimal and are outweighed by other factors justifying jurisdiction in this forum. *See*, Asahi Metal, *supra*, 480 U.S. at 114: "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."

In this case, LPI knew or should have known that it was "making a connection with" New

Mexico when it entered into the agreement with New Mexico resident Boughner, under which he was not only to invest money and track the course of his own investments but was also to find other investors for the viatical settlement products promoted by LPI. CompuServe, *supra*, 89 F.3d at 1268. The company "presumably . . . hoped that connection would work to [its] benefit." Id. It is not too heavy a burden, therefore, to expect LPI to answer in New Mexico courts when these business dealings go awry.

In addition, as the New Mexico Court of Appeals noted in Moore v. Graves, *supra*, "Defendant did not point to any facts . . . such as exhorbitant [sic] expenses to defend in New Mexico, the inability to bring witnesses to the forum state, an ability to travel the distance or appear in court" which might demonstrate an undue burden. Id., 99 N.M. at 133. The same is true in the present case. LPI is not in the position of the corporate defendants in such cases as Asahi Metal, Benton v. Cameco, and OMI Holdings v. Royal Ins. Co. of Canada, all cited *supra*, which would have been required to traverse long distances, cross international borders, and submit themselves and their disputes to a foreign nation's judicial system.

Secondly, the Court considers the New Mexico forum's interest in adjudicating the dispute. This factor weighs in favor of jurisdiction. Plaintiffs allege they suffered injury due to deceptive marketing practices by LPI. LPI, on the other hand, contends that Plaintiffs voluntarily assumed the risk that their investments would not result in the return they were hoping for as quickly as they wanted. The Court makes no judgment on the merits of the action but, as it is bound to do, takes the allegations of the complaint as true and resolves any factual differences at this point in favor of plaintiff.

Proceeding in this manner, it is clear that the courts in New Mexico have an interest in

25

enforcing state unfair practice statutes and in protecting New Mexico consumers from deceptive practices by both nonresident (and, indeed, in-state) corporate defendants. *See*, OMI Holdings, *supra*, 1086 ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors"); Santa Fe Technologies v. Argus Networks, 131 N.M. 772, 785, 42 P.3d 1221 (Ct. App. 2001); *and* McGee v. Int'l Life Ins. Co., *supra*, 355 U.S. at 223, wherein the Supreme Court, noting that the forum state "has a manifest interest in providing effective means of redress for its residents," upheld jurisdiction in a situation where the defendant insurance company had no office or agent in the forum state and had never solicited or done any insurance business apart from the policy involved in that litigation.  The Court finds that this factor weighs in favor of Plaintiffs.

The next factor, Plaintiffs' interest in obtaining effective and convenient relief, clearly weighs in favor of assuming jurisdiction.  With regard to "effective" relief, Plaintiffs have not shown that their chances of recovery would be greatly diminished if they were forced to litigate in LPI's home state; however, it would undoubtedly be more convenient for Plaintiffs to litigate in New Mexico.

Finally, the Court finds that the general interests of the judicial system and of the several states in obtaining efficient resolution of controversies and furthering fundamental social policies would not be offended by assumption of personal jurisdiction in this case.  Texas would not be a more "efficient" forum, as it appears that the witnesses in this case are evenly divided between Texas and New Mexico.  In the light most favorable to Plaintiffs, the facts are that Defendant LPI profited from the business arrangement it voluntarily entered into with Boughner and the other Plaintiffs, that it used deceptive tactics to convince Plaintiffs to invest in its viatical products and to convince Boughner to attract other New Mexico investors to these products, and that these investments worked to

Plaintiffs' disadvantage while adding to LPI's profits.  If this outcome resulted from unfair tactics or from violation of statutes designed to protect New Mexico consumers, as Plaintiffs allege, it would not violate social policy nor interfere with Texas sovereignty to require LPI to answer for its actions in New Mexico courts.

The Court finds that the factors discussed above weigh in favor of assuming jurisdiction.  To do so would not violate fundamental due process concepts, and the third prong of the jurisdictional test is therefore satisfied.  The first two prongs of the test being satisfied as well, the Court will assume *in personam* jurisdiction over LPI for the claims asserted in Plaintiffs' complaint.  The motion to dismiss for lack of jurisdiction is denied.

### D.  <u>Service of Process</u>

Having found personal jurisdiction under the Constitution and the New Mexico long arm statute, it follows that Plaintiff's service of process on the Secretary of State under N.M.S.A. 1978 § 38-1-6(B) was sufficient.  When a foreign corporation has not designated a person as its statutory agent to receive service of process in New Mexico, service of process on the defendant may be effectuated by paying the statutory fee and serving two copies of the process in the cause on the Secretary of State, who shall accept service of process as the agent of the foreign corporation.  The Secretary of State must give notice of the service of process to the foreign corporation at is principal place of business.  N.M.S.A. 1978 § 38-1-6(B),(C).

These steps were taken in the present case.  *See*, Notice of Acceptance of Service Certificate [Doc. 2 and exhibits thereto], and Notice of Return of Service [Doc. 6 and exhibits thereto].  The Secretary of State was served with process, and LPI acknowledges that it received notice at its office in Texas, via registered mail from the Secretary, of the summons and complaint.  [Doc. 5, at 2].

However, LPI argues that service was not effective because the LPI employee who signed for the registered mail did not have authority to accept service of process on behalf of the corporation, and the envelope mailed by the Secretary did not indicate that it contained legal process or that signing for the mail would be construed as acceptance of service.      This argument misconstrues the statute, which provides that Plaintiff effects service on the Secretary of State "as the agent of the foreign corporation," and the subsequent mailing constitutes "notice" to the corporation, rather than actual service.  The Court finds that service was validly made in this case, and the motion to dismiss on grounds of ineffective service will be denied.

## Order

IT IS THEREFORE ORDERED that Defendant's  Motion to Dismiss for Lack of Personal Jurisdiction and for Insufficient Service of Process [Doc. 4] is denied.  Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendant will have ten days following entry of this Order within which to serve and file its Answer.

_____
Lorenzo F. Garcia
Chief United States Magistrate Judge

28